United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Good morning. We have three appeals to hear this morning. Counsel, we're familiar with your cases. You have limited time this morning, so you should feel free to go straight to the heart of your argument and make the most important points that you want to make this morning. We're probably going to have some questions. If you're in the middle of an answer to a question as your time expires, please feel free to answer the question, finish your answer. But do be mindful of the clock. And when your time expires, it is time to wrap it up, unless it's pretty clear that we want to ask you more. We read your briefs. We've looked at the record and we're familiar with the authority cited in your brief. So, again, feel free to get straight to the heart of your argument. Our first case is United States versus Gallardo. Ms. Davidi. Yes, sir. Good morning. Good morning. May I please the court. My name is Anna Davidi and I represent Mikel Gallardo, who is the appellant in this case. I want to start by directing the court's attention to issue number one, which I believe is the strongest issue in this appeal. Mr. Gallardo was charged with a conspiracy to traffic in drugs. This case revolved around an essential witness who was a confidential source employed by the FBI. This confidential source was the only government representative who had direct contact with my client. While we adhere to the fact that there were recorded meetings and recorded phone calls, my client's position since day one has been that he was entrapped, that there was conversations and contact from this confidential source that were not monitored by any police officer. My client was arrested and indicted in this case in June of 2007. Your client testified, right? He did, sir. He testified that he had been entrapped, that he had been solicited and enticed by this confidential source to commit this crime. What do you do with, uh, so the jury would be free to discredit his testimony and to take that denial if it disbelieved it as substantive evidence of his guilt, right? Isn't that what our precedents say? Yes, sir. You're, you're, you're correct about that. Our position is judged that the failure of the government to disclose the fact that their star witness, this confidential source had been in deactivated by the FBI until halfway through the trial is a blatant Brady violation. As this court is well aware, the courts have for years been concerned with a prosecutor's conduct and a prosecutor's responsibility to disclose Brady information. There is no doubt. But, but, uh, it, the information was disclosed belatedly, right? It was served the third day of the trial. And, and, um, and the government made the informant available to testify. Um, but your client decided not to call him to testify. Right. I don't think that that's really clear from the record that they made him available. I know that I was not the lawyer in the lower court and I have reviewed the record several times. I know there was a motion for his identity to be disclosed. I know that the government, before they disclosed that he was double dealing, um, clearly, um, argued against the release of that information. I don't, I can't tell the court quite honestly what was done. I know the judge denied as per the record, that that information was disclosed.   I just, I know that the government made half of it. And granted another part of that motion would, what is clear is that the trial began these defense lawyers met with my client on numerous occasions. Went through all the tapes, prepared their trial based on the fact that this confidential source was a person working for the FBI, a person, the FBI relied upon and that was their strategy of the defense. They went in, gave their opening statement. They came in and cross-examined two witnesses that talked about how important confidential informants are, how this confidential informant worked, why they use confidential informants halfway through the testimony of their client. And they were given this bombshell information that this same prosecutor, this isn't a different prosecutor. There's no question that this same prosecutor had this information six months before this trial, less than 60 days after he indicted this same case. While he gave the defense at least four different discovery requests,  confidential informant. And that this confidential source who was crucial and important to the case was a cheat had lied. And that the, his handler who was sitting next to defend next to the prosecutor throughout the entire trial, knew this information. I have two questions. Chief judge. It occurred during the government's case in chief. That's when they turned it over. Is that correct? Yes, ma'am. It started. And the government did never called agent Catherine. But the defense thing called agent Catherine. Is that correct? They did your honor. And use this to reveal the details of the deactivation of the CS through Catherine. Right. Judge briefly. Yes. Our position is. I'm just trying to confirm first. During the defense. The defendant was able to call. FBI agent Catherine. And bring out all of this, that this informant. Had had basically. He was no longer trusted by the FBI. So you've got a great case here, actually. They are. You're getting to tell. The jury that now even the FBI says, I know there's a timing issue. But you did get to tell the jury. The FBI has now found this informant. The CS. So unreliable that they deactivated. The jury knew that, right? I'm just trying to confirm. Yes, ma'am. They do. What happens is that once they find out this information, They are then forced to call them. Call. I understand, but you got it. It was not perfect, but you got it in time to then totally. This credit, the CS through. Through even an FBI agent's testimony. My next question is. Yes, ma'am. Okay. You just tell me something. I didn't realize that the prosecutor did have this information before trial. But did Catherine have this information? Did the handler, the FBI handler know about it? Contemporaneously, not a trial. I'm talking about contemporaneously while they were using the CS back in. I guess it was 2016, April, 2016. As I understood it, Catherine when he was using him during the actual transaction. Didn't know about this other unrelated matter. Is that correct? Yes, you are correct. Finds out. About signs out. Later on. He doesn't know it while he's using him as a. Informant. He doesn't know. He finds out 60 days later. When he reapproaches this informant to do another deal with him. And then the informant says, listen, I've been involved with, I transported marijuana for another person. I didn't make money. And that's when Catherine makes the decision. Right then and there to deactivate this person because of his untrust. And he's basically double dealing. He then immediately sends the D activation memorandum. To the prosecutor who's involved in this case. So since the beginning of this prosecution, 30 days. After the indictment, this prosecutor is well aware. Of the fact that this exists and he does nothing to bring it forward. Our position is that the theory of the case, the preparation of the defense, what the defense would have done. They could have and would have gone to get the CIs record, which at that from the FBI, which at that point would have been available because he was deactivated. Their whole theory of their defense, their whole preparation would have been different and they would have gone to get the CIs record. And they would have gone to get the D activation memorandum. And it would have resulted in a different trial. Just to sum it up. It was a definite and intentional. Violation of Brady and it would have resulted in a different result. I also want to bring the court's attention to issue. What really would have been different. So you would have been able to say something about it in opening statement. As opposed to just being able to bring it out in close, you would have been able to examine some witnesses about it, but you actually called the agent. Who made the decision to terminate him? Absolutely. How different would this really have been? Well, they would have then made a decision on whether or not they were going to call the CI or not. They would have had much more background information on the CI. They could have been with the investigator. Call the CI anyway. I'm sorry.  I'm sorry. During the government's case in chief. Because I'm sorry. Why didn't the government or why didn't. Why couldn't the defense. Call the CI anyway. After it learned about this during the case in chief. Because they didn't have the information. CI. When they learned it, why couldn't they. During the defense's case have called the CI then. Why didn't they call the CI? Because they probably because they probably were not prepared to question him. Like they thoroughly needed to do about his background, how long he had been a CI, what exact. How much money. I mean, there was a lot of information background investigation. That would have been done. Had they done it was. Had they known he was a crooked confidential source so much so that I. That I believe they would have gone out to talk to this confidential source and say, Hey, what happened? Did you meet my client? Did you entice my client? Did you talk to my client at other times? Before my time runs out, I want to bring the court's attention to issue. Yes, sir. That's a record. Tell us. When. The CI. Engaged in the drug trafficking. That led to his. Being discharged. When did that occur? It does not. It just says that when the agent reached out to him in July, which would have been about 60 days after my client was arrested. That is when he's told that. But did he tell him when it occurred? No, sir. The record is not. The agent didn't ask him when it occurred. That. The reason I asked, it could have happened. Wow. The negotiations in this case. We're going on. No, I agree. I agree. I agree with your honor. That's a very good point. Unfortunately, the record is void as to that information. They could have asked the agent. On the span. They, they, they, they could have, but had, they had this information before they would have been able to investigate it much more thoroughly. They could have filed motions with the judge to turn over the details of his deactivation and not just a, you know, eight page lot line statement. That said he was deactivated. So they had very little information at that point. What was the other point you wanted to make very quickly? The other point I wanted to make is there, there was a motion for mistrial. That was when agent Valenzuela was brought back on rebuttal to challenge the entrapment testimony or the testimony by my client, he testified at that time that there was two photos. This is about the operation of the phone and the, and the, and the, and the court instructs the jury, does it not? That that. That it should disregard that testimony. Right.  I'm not sure how appalled judge cook was because remember. It's pretty apparent from the record. Right. It's very, no, no, it's very apparent that she is shocked because. What makes it extraordinarily a by extraordinarily worse is that not only was this witness, the main witness that talked about what happened between the confidential source and my client, he also. I think we understand this argument. I allowed you to go over to, to just preserve it. So let's, let's hear from this. Thank you. Morning, your honors, Andrea Hoffman on behalf of the United States. Attorney's first to the issue of the confidential informant and the notification of deactivation. First and foremost, this issue is reviewed on this level as a plain error standard, because it was not presented to the district court, the new trial motion while at appellate level is attempting to argue three different grounds for reversal. Only one of those grounds was presented in the district court, the drug quantity issue. So focusing on the CI issue, it would be under a plain and error standard of review. And there are no cases that I've been able to find that would create a writing Brady violation on the appearance of. The CI being somehow trustworthy that is later disabused. There is no question. There was a motion for a new trial, but this was not alleged as a ground in it. Correct, sir. It was not alleged as a ground in the new trial motion at the district court level. That was solely drug quantity. The one versus seven kilo issue presented in the briefs as the court noted. Unfortunately also argued the weight of the evidence and the motion of a new trial was against the jury verdict. That was as to the quantity of the drugs specifically your honor. It was arguing. I'm sorry, your honor. I didn't hear the end of that. I heard the start of the sentence, weighted the evidence, but I didn't hear the remainder of what you said. Judge hole. Yeah. The motion for new trial. The argument was. That's the conviction should be. I have a new trial or he should have a new trial because the weight of the evidence. Are you telling me you can't. Oh, okay. There's miss hopping. I don't know if you can hear me, but I believe I heard your question. And I will attempt to answer it. And if I didn't hear it correctly, please interrupt me. The. New trial motion. Argued that the weight of the evidence did not support a finding of seven kilograms. Even though the jury gave a specific jury verdict of five kilograms or more. So yes, there is absolutely the phrasing and the terminology of weight of the evidence. As that was exercised in the new motion, new trial motion. It was directed solely at the question of whether a jury could reasonably have found more than five kilograms of cocaine in this case. There was no mention of a Brady box. No, sir. There was no mention of a Brady violation at all in the new trial motion or in the hearing that was held on the new trial motion. I thought they may not have said Brady, but just talked about the. Deactivation of the. Not in the new trial motion, your honor, the CS deactivation issue was talked about during the trial itself. The defendants asked solely for a copy of the memorandum that deactivated. That memorandum was viewed in camera and judge show flat to your question. There was a. The, the, there is not a specific date that the CI said that he did the drug transaction. What the memo says is that he called Catherine and told him about having done a drug transaction. The implication being, it had just happened, but that is not clear in the memorandum. The defense council asked for that memorandum, your honor. And after the in-camera review were granted it, they had been given a almost verbatim summary of the memo previously, but the court did grant them the copy of the physical memo themselves. And what's critical about that is, although it was not unfortunately given until the middle of the trial or the third day of the trial, it was given while agent Valenzuela was still on the stand. He was the. Longest witness that testified on behalf of the government. And at the conclusion of his direct examination, Defense counsel chose not to cross-examine. Agent Valenzuela about that CI memo or the deactivation of the CI. It is highly unlikely that such questions would have been asked of either of the two witnesses that testified prior to agent Valenzuela, because both of them testified in answer to a question about the CI, that they had no personal knowledge of the CI and that any questions would have had to have been directed to agent Catherman. That happens at. Docket entry one 17 at page eight for the first witness and at page 62 for the second witness. So, and after receiving this memo, the. Defense counsel did as judge prior noted called agent Catherman and went through all aspects of the deactivation and therefore the impeachment qualities of the CI. And in closing argument, this was in part, a crux of their deeply intertwined into their argument about entrapment and, or lack of motive on the part of the defendant to participate. I believe it's judge prior noted that the jury was free to make the credibility determinations. They were properly instructed on the credibility interpretations, and they were free to not only disbelieve the defendant, but then use that disbelief as substantive evidence of his guilt, which they did do. You can hear me. I want to confirm. There was an affirmative substantive. Yes, ma'am. There was an affirmative, substantive entrapment defense given to the two. Yes, ma'am. They did, you know, and your honor in answer to your other, question. No, to be perfectly clear. No, agent Catherman did not know that the CI was not working in accordance with his requirements at the time that the crime happened. This knowledge came only out in July of, of the summer. Several months after all acts within this indictment had been completed. If there are no further questions about the CI deactivation, I will touch briefly on the mistrial question that is to be answered at the end. And with respect to that, as judge prior noted, the district court struck the testimony, gave a thorough and comprehensive curative instruction. The standard under this is that under a motion from. Was there any objection to the curative instruction? There was not your honor. I didn't find one, but I thought I asked anyway. No, there wasn't. And it was discussed thoroughly outside of the presence of the jury. And then it was given some time later, the motion for mistrial was made before the instruction was formally given to the jury. I think that's of no moment here. I don't think that makes it not an effective motion for mistrial, but they didn't renew it even after the curative instructions, I wouldn't have expected. Usually the mistrial motion argues that a curative instruction can, can cure the problem. They didn't argue that specifically. And in fact, defense counsel asked not for the curative instruction, but rather the defense counsel wanted to put the witness back on the stand and go through the essentially curate by the Q and a of the agent further on the stand. One of the things I think that's also important to remember in this issue is that during the closing defense counsel specifically mentioned mentioned agent balance, will to use his testimony that he had elicited in cross about the weight and the size of a hundred kilograms of marijuana and did not challenge his credibility at all during his closing, did not attack his credibility in any form of any piece of his testimony. So under this circumstance, particularly when you have the defendant testified and virtually everything that agent balance will testify about anything of critical factor, I either definitions of certain code words or the explanation of what numerical numbers meant as to quantities of drugs, the defendant acknowledged and admitted the, the interpretations were correct, or at least just simply said, yes, that's what something meant, or yes, that's what occurred at that point in time in the calls. The fact that the defendant testified this, the evidence in this case is substantial. It is overwhelming. It is telephone calls and meetings fully recorded corroborated by the onsite observations of several surveillance witnesses. And then the defendant admitted every act that is necessary in this case, with the exception of quantity of the drugs, he tried to dispute that and why he was involved. And the jury was entitled to make their credibility determinations and the testimony and the weight of the defendant's information. If there's nothing further, the government would rest on its briefs, ask that the convictions be affirmed and the sentence be upheld. Okay. I don't hear any more questions. Thank you, Ms. Hoffman. Mr. Davidi, you've saved five minutes from rebuttal. I did judge. There's, there are several points that I want to make. Number one, as to our first point while it is true that we don't know exactly when this double dealing occurred, it is clear that it is happening either right after or contemporaneous to what is going on in this case. We strongly disagree that the evidence in this case is overwhelming. The evidence in this case is only dependent on the conduct with the credibility. Now wait a minute. Your client testified that he was, he was, he was part of this deal. Yes. The question is whether he was entrapped and, and, and he denied that he, I mean, he, he, he said that he was entrapped. The jury was free to disbelieve him. There's, there's a little bit more than the agent's testimony here and, and the confidential informants involvement, right? Well, yes, judge, to a certain degree, but there's also things that my client testified to as to his conduct with his contact with the confidential source that is not recorded, that, that is much more likely to have occurred because the conduct of this confidential source. I do not agree that the testimony of the first two witnesses would have been void of any conversation or any contact as to the activation. I believe that both of those witnesses, as a matter of fact, the second witness talks about the credibility of confidential sources and why they are used. I think. Is it, is it true that the Brady issue was not raised in the motion for new trial? Our position is because it talks about the weight of the evidence and it over and it asked for a new trial. It covered everything that happened in the trial. We will, we will concede to the fact that it wasn't specifically mentioned by the attorneys involved in the case, but it was definitely was an issue at the trial. Our position is that because it's an intentional Brady violation, it be court should be especially concerned with that type of violation. As a matter of fact, there's legislature right now that's going to advise judges to ask prosecutors about Brady at the very first hearing had that happened in this case, the prosecutor would have been asked the direct question. And hopefully he would have then disclosed it. Instead he sat on this information, went to hearing after hearing on this case and never told the defense this crucial information. This was an intentional Brady violation. It materially affected the results of the trial. And we believe that the entire trial would have been different had this information been provided to them. No, ma'am. No, there was absolutely nothing. The judge, as a matter of fact, he fought the defense's request to disclose the actual memo. And the judge, when she heard the facts, immediately turned over that memo to the defense. So even the judge and the judge, and it's important. And I quoted it to read what the judge said. The judge said that this is a crucial witness that this defendant has from the get go argued that he was, that he was coerced and that he was entrapped. It seems to me that your argument is Brady. Yes, sir. Is that it was a structural error because you couldn't, we can't reconstruct what would have happened had they made the disclosure well in advance of trial. Do you know of any, any Brady cases in which the court has declared that the error was structural in which event you don't have to show prejudice is what I'm saying. Well, judge, I know that we must show that the results of the trial was a probability that they would have been different. And I think that structural error eliminates that requirement. That's all I have. There was no change cited in the briefs about structural error. Unfortunately, I did a thorough search and I was unable to find anything on that, but because of the special care that the courts are taking now with violations of Brady. And because I have read article after article that indicate that a large number of wrongful convictions are based on prosecutors intentionally withholding Brady. I think this court should be especially concerned with the behavior and how that behavior of this prosecution and that withholding of crucial information subsequently violated my client's rights and resulted in a wrongful conviction. I think that your time has expired. Okay, sir. I will then rest on my brief for all my other issues. And I ask your honor to please grant Mr. Gallardo a new trial. And I thank you very much for your time. Thank you.